IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BILFINGER WESTCON, INC.     )
     )
     Plaintiff,     )
     )     Civil Action No. _____
v.     )
     )     JURY TRIAL DEMANDED
MARKWEST LIBERTY BLUESTONE,     )
LLC, SNC-LAVALIN AMERICA, INC.     )
and SNC-LAVALIN GROUP INC.     )
     )
     Defendants.     )

## COMPLAINT

Plaintiff Bilfinger Westcon, Inc. ("Westcon"), by its attorneys, Steptoe & Johnson PLLC, files this Complaint against MarkWest Liberty Bluestone, LLC ("MarkWest") and SNC-Lavalin America, Inc. and SNC-Lavalin Group, Inc. (collectively "SNC").

## INTRODUCTION

1.     This dispute arises from the failure of MarkWest to pay Westcon over $26 million for construction work at MarkWest's Bluestone gas processing facility in Jackson Township, Butler County, Pennsylvania. Defendant SNC is also liable to Westcon because it supplied inaccurate and incomplete engineering drawings and other information used by Westcon in bidding the project. This resulted in numerous additional or revised post-bid construction documents issued during the course of Westcon's construction work and consequential losses to Westcon. MarkWest directed Westcon to perform the additional work necessitated by the changed construction documents, but

later refused to execute appropriate change order documentation or pay for the additional work. MarkWest also refuses to compensate Westcon for the impact of delays due to contractors and others not under Westcon's control and under the direction and control of MarkWest and/or SNC and other changed conditions that dramatically raised the cost of Westcon's performance.

## PARTIES

2.       Plaintiff Bilfinger Westcon, Inc. is a North Dakota corporation with its principal place of business at 7401 Yukon Drive, P.O. Box 1735, Bismarck, ND 58502. Westcon is an industrial construction company.

3.       Defendant MarkWest Liberty Bluestone, LLC is a Delaware limited liability company with its principal place of business located at 1515 Arapahoe Street, Tower 1, Suite 1600, Denver, Colorado 80202. MarkWest Bluestone is the owner/operator of a gas processing facility in Jackson Township, Butler County, Pennsylvania known as "Bluestone" or the "Bluestone Facility."

4.       SNC-Lavalin America, Inc. is a Colorado corporation with its principal place of business located at 6585 Penn Avenue, Pittsburgh, PA 15206. SNC-Lavalin America, Inc. is an engineering firm and served as MarkWest's engineers on the Bluestone project.

5.       SNC-Lavalin Group, Inc. is a Canadian corporation with a place of business located at 6585 Penn Avenue, Pittsburgh, PA 15206.  SNC-Lavalin America, Inc. is a subsidiary of SNC-Lavalin Group, Inc.

7214863.2

JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7.      The defendants are subject to the personal jurisdiction of this Court because both defendants maintain offices in this District and many of the acts and occurrences herein alleged occurred in this District. The construction activities which are the subject of this dispute occurred in this District. Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391. In addition, the written contracts between Westcon and MarkWest provide for dispute resolution in a federal or state court where the property in which the Bluestone site is located, which is this District.

FACTS

8.      In 2014, MarkWest announced plans to expand its Bluestone Facility. MarkWest desired to install: (a) an additional cryogenic gas separation plant, (b) a fractionator plant; and (c) a stabilizer plant.

9.      MarkWest issued bidding documents to provide contractors information necessary to bid the civil, mechanical, electrical and other work associated with installation of the facilities ("Bid Documents") and upon which the contractors were to rely.

10.     The Bid Documents included the following packages which described the scope of work to be provided by the contractor: (a) Requisition for MarkWest's Bluestone III 200 MM SCFD Cryogenic Gas Separation Plant ("Cryo"); (b)

3

Requisition for MarkWest's Bluestone 33,000 B/D Fractionator Plant ("Frac"); and (c) Invitation to Bid MarkWest Bluestone Stabilizer OSBL & ISBL ("Stabilizer") Construction. The Bid Documents also included drawings, specifications and other information.

11.     SNC was MarkWest's lead engineer on the Bluestone projects and, along with MarkWest, played a substantial role in creating all or part of the drawings, construction documents and other information and materials that comprised the Bid Documents.

12.     After review of the Bid Documents, Westcon submitted bids and was awarded the Cryo, Frac and Stabilizer construction work.

13.     Westcon and MarkWest entered into contracts for all three projects. The contracts included: (a) Construction Contract Bluestone III Civil, Mechanical, and Electrical dated May 5, 2015 ("Cryo Contract"); (b) Bluestone Fractionator Civil, Mechanical, and Electrical dated July 2, 2015 ("Frac Contract"); and (c) Lump Sum Construction Contract Bluestone 3 Plant Stabilizer dated September 3, 2015 ("Stabilizer Contract") (collective, the "Contracts").

14.     The Scope of Work is set forth in Exhibit A to each Contract and is consistent with the Bid Documents.

15.     In preparing its bids and entering into the Contracts, Westcon relied on the accuracy of the Bid Documents including the construction documents and drawings prepared by MarkWest and SNC.

16.     Westcon mobilized to begin work on the Cryo project in May 2015, the Fractionator in July 2015, and on the Stabilizer in September 2015. Westcon

4

achieved substantial completion of the Cryo work in January 2016, and the Fractionator

and the Stabilizer work in February 2016.


### MARKWEST CHANGES AND ADDITIONS
### ADD TO WESTCON'S SCOPE OF WORK

17.     Exhibit F to both the Cryo Contract and the Fractionator Contract

provide for increase in Westcon's compensation due to additions to project scope:

> Westcon's Proposal and GMP [Guaranteed Maximum Price] is based on
> the documents provided and allowances for work necessary for project
> completion. Any Owner/Engineer added scope item will be considered
> outside the target and GMP and will be handled on a change order basis
> for possible escalation of both the target and GMP.

(Cryo Contract, Ex. F, item 8; Fractionator Contract, Ex. F, item 3).

18.     During the course of Westcon's performance of the Contracts,

MarkWest directed Westcon to perform substantial additional work that was not

described in the original Scope of Work. MarkWest submitted numerous revised and

additional construction documents to Westcon. The requests for additional work were

made verbally in the field, in emails, and/or in meetings.

19.     MarkWest personnel in charge of the Bluestone projects induced

Westcon to complete the additional work prior to execution of change order

documentation. They represented that it takes time for MarkWest management to execute

change orders/purchase orders and if Westcon were to wait for that documentation then

MarkWest's project completion deadlines would not be met. MarkWest repeatedly

represented that time was of the essence in completion of the Bluestone projects. The

Contracts also state that "[T]ime is of great importance in this Contract."

20.     In addition, a MarkWest representative directed Westcon to postpone submission of change orders until final completion on the ground that one large change order submission near project completion would be better received by MarkWest management than multiple submissions throughout the job.  Weston relied upon this direction and proceeded with the work, for which MarkWest has not paid Westcon, relying in whole or in part on the argument that change orders were not executed.

21.     MarkWest verbally promised on several occasions to process change orders formally and issue the purchase orders near final completion in an effort to "only have to go to the well once."

22.     In order to help MarkWest maintain its schedule, and in reliance upon the course of dealing and above-described representations of MarkWest personnel, Westcon completed the additional work as directed by MarkWest.

23.     MarkWest-directed changes to the mechanical scope of work during the course of the projects were extensive and included addition of approximately 9,988 additional linear feet of piping, approximately 259 tons of structural steel, approximately 307 cubic yards of concrete, approximately 3,012 additional welds, and other additional labor and materials.

24.     MarkWest-directed changes to the electrical scope of work included addition of approximately 58,151 linear feet of conduit, approximately 577,955 linear feet of cable, approximately 10,733 linear feet of cable tray, approximately 16,759 terminations, and other additional labor and materials.

6

25.     The Cryo project alone began with 705 construction documents and ended with 966 construction documents. The 966 construction documents contained 984 revisions made through the course of the project.

26.     The Frac and Stabilizer project began with 690 original drawings and ended with 1,137 final issue drawings.  There were 699 total revisions during the project.

27.     The need for additional labor and materials was, in whole or part, the result of engineering errors and miscalculations committed by SNC that were included in the original Scope of Work and Bid Documents.

28.     MarkWest also directed Westcon to perform work on a Booster Compressor at Bluestone but ultimately refused to pay for it.

29.     MarkWest was aware of Westcon's additional work as described above. MarkWest never directed Westcon to stop such activities. Westcon provided supporting documentation to MarkWest for all additional work.

### DELAYS BY CONTRACTORS NOT UNDER WESTCON'S CONTROL AND OTHER CHANGED CONDITIONS NOT WITHIN WESTCON'S CONTROL FINANCIALLY IMPACT WESTCON

30.     The Contracts provide terms allowing for equitable adjustment to Westcon's compensation for delays and changed conditions outside Westcon's control.

31.     Paragraph 17 of each Contract provides:

**17.0 Delays by Company; Other Contractor**

In the event **Contractor** should be delayed in the completion of the Scope of Work by reason of any act or omission of company or of another contractor employed by **Company** at the Property, the Work Schedule shall be extended by the period of such delay. Contractor shall be

7

permitted an adjustment in the Target and Guaranteed Maximum Price if any critical path delays, individually or in the aggregate, cause the contract time to be increased by more than ten (10) days. In such event, Contractor's compensation shall be equitably adjusted to reimburse Contractor for direct, unavoidable and reasonable costs.

32.     Additionally, Exhibit F to the Cryo Contract and Frac Contract (Contractor Clarifications and Exceptions) provides: "Westcon's Proposal is based on Westcon controlling the means, methods, schedule, and sequence of work." Exhibit F to the Frac Contract further provides: "Westcon's Proposal is based on Owner/Engineer provided material/equipment arriving within a +/- one week bandwidth from the delivery dates received within the bid packages."

33.     During the course of construction work at Bluestone, delays by contractors, suppliers and others not under Westcon's control caused substantial financial impact to Westcon. Westcon did not assume such risks in its contracts. Such events entitled Westcon to additional compensation. Some of the categories of delays are described below.

34.     A delay in receipt of MarkWest's Pennsylvania Department of Environmental Protection Air Permit caused delay in commencement of Westcon's work on the Cryo unit.

35.     Equipment to be installed by Westcon was received late or without all necessary structural members and hardware.

36.     Delays due to scope of work changes caused substantial financial impact to Westcon.

37.     Westcon provided the following additional services  in response to the delays as part of its effort to maintain MarkWest's project schedule:

8

a) Added additional shifts for itself and subcontractors;

b) Added additional manpower and equipment;

c) Re-sequenced activities;

d) "Stacked" trades so that tasks which otherwise could have been more efficiently performed sequentially were performed concurrently,

e) Rescheduled deliveries;

f) Moved cranes and other equipment;

g) Communicated with MarkWest, engineers, Westcon staff, subcontractors and suppliers to react to events, propose solutions and coordinate activities; and

h) Redirected crews multiple times.

38.     Costs incurred by Westcon as a result of the above-described delays and resulting schedule compression and project extension included the following:

a) Inefficiency due to stacking of trades and equipment;

b) Inefficiency due to re-sequencing;

c) Inefficiency due to double handling of materials;

d) Increased piping, structural equipment, scaffolding, insulation, electrical parts, and other parts and equipment;

e) Increased use of cranes and other heavy equipment;

f) Increased manpower;

g) Increased shifts; and

h) Increased personnel downtime costs.

39.     In addition to the delays, MarkWest changed its priorities and redirected Westcon's workforce multiple times during the project. The Frac and Stabilizer completion dates changed several times. At one point a MarkWest representative told Westcon that the Frac was no longer needed and directed Westcon to remove its entire workforce off of the Frac project and to focus solely on the Cryo. The shifting of labor due to these factors and materials and associated changes caused additional project costs.

40.     MarkWest knew that the delays and changed conditions caused Westcon to incur additional labor, material, overhead and other costs. Westcon submitted change orders to MarkWest, with all appropriate backup documentation.


THE LINE RETEST ISSUE

41.     During the course of the project, MarkWest discovered that various lines in the Cryo unit had been tested at an incorrect pressure. This problem was caused by SNC providing incorrect test pressure data to Westcon.  Moreover, upon information and belief, SNC did not raise any concerns to Westcon after reviewing the test pressure inspection reports, or negligently failed to do so, until the problem was discovered by MarkWest.

42.     MarkWest ordered Westcon to retest nearly the entire Cryo unit at new pressures. At the time, MarkWest had already introduced gas and had commenced the plant startup process. MarkWest instructed Westcon to devote all of its manpower to retesting the Cryo lines so that the startup process could be resumed as soon as possible and MarkWest's losses minimized.

7214863.2

43.     MarkWest acknowledged that the problem was not the fault of Westcon.

44.     At great expense and effort, Westcon worked through the day and night and completed the testing in only approximately 30 hours.

45.     Westcon submitted a change order for the Cryo retest work. MarkWest did not pay Westcon for that change order, wrongfully and in breach of the contract.

## MARKWEST REFUSES TO SIGN CHANGE ORDERS

46.     After most of Westcon's supplemental work had been performed, and financial impact of changed conditions and delays incurred, MarkWest failed to execute appropriate change orders and issue purchase orders as requested by Westcon and previously agreed to by MarkWest.

47.     MarkWest representative Shane Hecht stated that MarkWest was "out of money" for this project, or made similar statements. Mr. Hecht blamed Westcon for cost overruns that in reality were the result of revised/supplemental construction drawings and other factors not within the control of Westcon, as discussed in this Complaint. This was nothing but an unfair attempt by MarkWest to shift the burden for project overruns to Westcon.

48.     MarkWest presented Westcon with a final sum that MarkWest was willing to pay, which represented a deep discount from the fair value of the work and costs as reflected in the submitted change orders, without any legitimate explanation for the reduction or challenge to the accuracy or appropriateness of Westcon's invoices.

11

49.     Notwithstanding the developing dispute, MarkWest continued to ask Westcon to perform additional work or bid additional projects at Bluestone including booster compressor mechanical work, Stabilizer start up work, and a storage facility installation. By this time Westcon refused to proceed without a purchase order or change orders.

50.     Additionally, when MarkWest asked Westcon to bid the booster mechanical project, Westcon reminded MarkWest that Westcon had already performed certain booster compressor mechanical work included among the supplemental construction documents submitted during the course of the job. At that time Shane Hecht of MarkWest stated in words or substance that Westcon's pricing for the previously completed booster compressor work was acceptable and that he would include it in the final purchase order. MarkWest never delivered on that promise.

51.     Westcon invoiced for the Scope of Work changes and additional costs incurred. Westcon submitted a change order and invoice for the cumulative impact of the numerous Westcon/SNC changes including inefficiencies, additional labor costs and project extension. MarkWest has failed or refused to pay the amounts demanded.

## AS AND FOR A FIRST CAUSE OF ACTION – BREACH OF CONTRACT (AGAINST MARKWEST)

52.     Westcon incorporates the above paragraphs as if set forth in full here.

53.     During the performance of the Contracts by Westcon, MarkWest and/or its authorized representatives directly or constructively initiated various changes in

12

7214863.2

the Scope of Work and/or directed Westcon to perform extra work as described in this Complaint.

54.     The aforementioned changes were beyond the Scope of the Contracts and required Westcon to incur additional costs including labor, material, equipment and overhead costs.

55.     During the course of the projects Westcon and MarkWest agreed and understood that because of scheduling constraints relating to completion of the projects, the preparation and finalization of documentation relating to the Scope of Work changes initiated by MarkWest and/or its agents would be handled after the performance of the work.

56.     MarkWest was fully aware that this additional work was beyond the scope of the Contracts and was being performed by Westcon with the expectation that it would be properly compensated therefor.

57.     MarkWest and its authorized representatives were present at the time this work was being performed and observed this extra work being performed without comment or objection.

58.     Despite full and complete performance of this extra work by Westcon, Westcon is still owed additional compensation for which it has not yet received compensation from MarkWest.

59.     Westcon has demanded that MarkWest pay Westcon the amounts due and owing for this extra work but MarkWest has neglected, failed and refused to pay pursuant to the terms and conditions of the Contract, which constitutes a breach of the Contracts by MarkWest.

13

60.     MarkWest also breached the Contracts by failing to execute change orders for the financial impact of delays by contractors, suppliers and others not under Westcon's control, changed conditions, and other events not the fault of Westcon.

61.     By reason of the foregoing, Westcon has been damaged in an amount in excess of $75,000.00 exclusive of interest and costs.

WHEREFORE, Plaintiff Bilfinger Westcon, Inc. requests that the Court award damages in its favor and against MarkWest Liberty Bluestone, LLC in an amount to be proved at trial but in excess of $75,000.00, exclusive of interest and costs, plus such other and further relief as the Court deems proper.


AS AND FOR A SECOND CAUSE OF ACTION –
BREACH OF ORAL CONTRACT (AGAINST MARKWEST)

62.     Westcon incorporates the above paragraphs as if set forth in full here.

63.     In the alternative, Westcon and MarkWest entered into an oral contract or contracts for performance by Westcon of certain additional work in excess of the Scope of Work set forth in the Contracts.

64.     Westcon has demanded that MarkWest pay Westcon the amounts due and owing for this extra work but MarkWest has neglected, failed and refused to pay pursuant to the terms and conditions of the Contract, which constitutes a breach of the Contracts by MarkWest.

65.     By reason of the foregoing, Westcon has been damaged in an amount in excess of $75,000.00 exclusive of interest and costs.

7214863.2

WHEREFORE, Plaintiff Bilfinger Westcon, Inc. requests that the Court award damages in its favor and against MarkWest Liberty Bluestone, LLC in an amount to be proved at trial but at least $75,000.00, exclusive of interest and costs, plus such other and further relief as the Court deems proper.

AS AND FOR A THIRD CAUSE OF ACTION –
VIOLATIONS OF THE CONTRACTOR AND SUBCONTRACTOR
PAYMENT ACT, 73 P.S. § 507 *ET SEQ*. (AGAINST MARKWEST)

66.     Westcon incorporates the above paragraphs as if set forth in full here.

67.     As set forth above, Westcon is a contractor that entered into contracts with an owner, MarkWest, as defined in the Contractor and Subcontractor Payment Act.

68.     Westcon performed in accordance with the Contracts and has fully satisfied all prerequisites to the application of the Contractor and Subcontractor Payment Act, and Westcon is entitled to payment of all amounts which remain due and owing.

69.     MarkWest has failed to make payment to Westcon in accordance with the Contracts.

70.     There is no good faith basis for MarkWest's failure to make such payments, and any and all amounts are being withheld in bad faith.

71.     Westcon is entitled to interest on any and all amounts due in accordance with Section 505(D) of the Contractor and Subcontractor Payment Act.

72.     Westcon is entitled to interest on any and all amounts due as a penalty in accordance with Section 512(A) of the Contractor and Subcontractor Payment Act.

73.     Westcon is further entitled to attorney fees in accordance with Section 512(B) of the Contractor and Subcontractor Payment Act.

WHEREFORE, Plaintiff Bilfinger Westcon, Inc. requests that the Court award damages in its favor and against MarkWest Liberty Bluestone, L.L.C. for violations of the Pennsylvania Contractor and Subcontractor Payment Act in an amount in excess of $75,000, exclusive of interest and costs.


AS AND FOR A FOURTH CAUSE OF ACTION –
DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL (AGAINST MARKWEST)

74.     Westcon incorporates the above paragraphs as if set forth in full here.

75.     Under the principle of detrimental reliance, or promisor estoppel, a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcing the promise.

76.     MarkWest made promises/representations as described herein that induced Westcon to perform substantial additional work and supply substantial additional materials prior to preparation and finalization of documentation relating to the Scope of Work changes initiated by MarkWest and/or its agents and that the documentation would be handled after the performance of the work.

16

77.     During the performance of the additional work, MarkWest and its agents never informed Westcon that it would not be paid for the additional materials and services.

78.     Westcon would not have performed the additional work if it knew that it would not have been paid for the products and services.

79.     Due to Westcon's performance of the additional work, Westcon was provided with completed Cryo, Frac and Stabilizer projects.

80.     Westcon has been damaged by, and to the extent of, the detrimental reliance on the promises/representations of MarkWest.

81.     Despite full performance of this extra work by Westcon, Westcon is still owed additional compensation.

82.     By reason of the foregoing, Westcon has been damaged in an amount in excess of $75,000 exclusive of interest and costs.

WHEREFORE, Plaintiff Bilfinger Westcon, Inc. requests that the Court award damages in its favor and against MarkWest Liberty Bluestone, L.L.C. in excess of $75,000 exclusive of interest and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT (AGAINST MARKWEST)

83.     Westcon incorporates the above paragraphs as if set forth in full here.

84.     Westcon performed services and provided materials at Bluestone as described in this Complaint.

17

85.    In providing these services and materials, Westcon conferred a benefit upon MarkWest.

86.    If Westcon would not have performed the extra work as described in this Complaint, the Cryo, Frac and Stabilizer projects would not have been completed which allow MarkWest to generate revenues from the Bluestone facility.

87.    MarkWest has accepted and retained such benefits under circumstances as set forth in this Complaint wherein it would be inequitable to permit MarkWest to retain these benefits and, therefore, MarkWest has been unjustly enriched.

88.    Westcon has been damaged by, and to the extent of, the unjust enrichment of MarkWest.

89.    Despite full performance of this extra work by Westcon, Westcon is still owed additional compensation.

90.    By reason of the foregoing, Westcon has been damaged in an amount in excess of $75,000 exclusive of interest and costs.

WHEREFORE, Plaintiff Bilfinger Westcon, Inc. requests that the Court award damages in its favor and against MarkWest Liberty Bluestone, L.L.C. in excess of $75,000 exclusive of interest and costs.


AS AND FOR A SIXTH CAUSE OF ACTION –
NEGLIGENT MISREPRESENTATION (AGAINST SNC)

91.    Westcon incorporates the above paragraphs as if set forth in full here.

18

7214863.2

92.     SNC made representations of material fact in the form of drawings and other construction documents for the Cryo, Frac and Stabilizer projects at MarkWest's Bluestone facility.

93.     SNC provided the drawings and other construction documents with full knowledge that they would be included in bid packages supplied to prospective bidders and relied upon by those bidders.

94.     Westcon was the successful bidder on the Cryo, Frac and Stabilizer projects and fully performed the projects as set forth in this Complaint. In making its bids and performing the Work, Westcon reasonably relied upon the accuracy and completeness of the drawings and other construction documents submitted by SNC.

95.     SNC owed a duty of care to Westcon to assure that its drawings and other construction documents were accurate and complete. Westcon's reliance on the accuracy of such information was reasonably foreseeable to SNC.

96.     As described in this Complaint, SNC's original drawings and other construction documents provided to Westcon at the time Westcon made its bid were inaccurate and/or incomplete. The drawings and construction documents were revised and supplemented multiple times in connection with the projects.

97.     Accordingly, SNC provided false information in the course of its business, profession or employment within the meaning of the Restatement (Second) of Torts Section 552, as adopted in Pennsylvania. Westcon is in the class of persons for whose benefit and guidance SNC intended to supply the information.

7214863.2

98.     MarkWest required Westcon to perform additional work and supply additional materials in order to perform the projects under the Contracts consistent with the revised and supplemental drawings and other construction documents.

99.     By reason of the foregoing, Westcon incurred substantial additional labor, materials, costs and overhead to perform the Bluestone projects. MarkWest has not fully compensated Westcon for all of the additional work performed by Westcon necessitated by SNC's negligent misrepresentations in the form of inaccurate and/or incomplete engineering drawings and other construction documents.

100.    SNC failed to meet the standard of care and professional conduct required of engineers performing similar work on similar projects, those failures were the direct and proximate cause of damages sustained by Westcon, as set forth herein, Westcon suffered damages as a result of the failures of SNC, and, therefore, SNC is liable to Westcon for all damages sustained.

101.    By reason of the foregoing, Westcon has suffered losses and been damaged by SNC in an amount in excess of $75,000 exclusive of interest and costs.

WHEREFORE, Plaintiff Bilfinger Westcon, Inc. requests that the Court award damages in its favor and against SNC-Lavalin, Inc. in excess of $75,000 exclusive of interest and costs.

## JURY DEMAND

102.    Plaintiff demands trial by jury on all causes of action so triable.

7214863.2

Respectfully submitted,

STEPTOE & JOHNSON PLLC


/s/ Adam S. Ennis
Adam S. Ennis
PA I.D. No. 71999
11 Grandview Circle
Suite 200
Canonsburg, PA  15317
(724) 873-3180
(724) 873-3143 fax
adam.ennis@steptoe-johnson.com

and

/s/ Brian J. Pulito
Brian J. Pulito
PA I.D. No. 203952
201 Chestnut Street, Suite 200
Meadville, PA 16335
(814) 333-4900
brian.pulito@steptoe-johnson.com

and

/s/ Eric J. Hulett
Eric J. Hulett
(Member of the West Virginia Bar,
Application for Admission *Pro Hac
Vice* to be filed)
Edwin Miller Professional Center
1250 Edwin Miller Blvd., Suite 300
Martinsburg, WV 25404
(304) 263-6991
eric.hulett@steptoe-johnson.com

Attorneys for Plaintiff
Bilfinger Westcon, Inc.

7214863.2